**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KHALID BENDIDI,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-26-1946** |
| **GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.,** | * | |
| | * | |
| **Defendant,** | * | |

# MEMORANDUM OPINION

On May 18, 2026, Plaintiff Khalid Bendidi, who is self-represented, initiated the above-captioned action against his former employer, General Dynamics Information Technology, Inc. (GDIT), alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*.[1] ECF No. 1. Pending before the Court is GDIT's motion to dismiss. ECF No. 14. The motion is fully briefed and no hearing is necessary. ECF Nos. 14, 16-17; Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, GDIT's motion is granted.

## I. BACKGROUND

### A. Factual Allegations[2]

Between June 2011 and April 2024, Mr. Bendidi was employed with GDIT as a "Principal Information Security Analyst assigned to cybersecurity operations supporting the Internal Revenue

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent. ECF No. 13; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

[2] This factual summary is drawn from the relevant allegations in the Complaint (ECF No. 1), which are accepted as true for the purpose of deciding this motion, as well as documents that are integral to the Complaint and authentic. *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164–165 (4th Cir. 2016); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Service" (IRS). ECF No. 1-1 ¶¶ 1, 17. Mr. Bendidi "consistently performed his job duties satisfactorily and professionally." *Id.* at ¶ 2. Mr. Bendidi "served as the de[ ]facto shift lead for many years without receiving the title or promotion." *Id.* at ¶ 5. On September 6, 2023, GDIT promoted a "less experienced and less qualified" employee to a team lead position instead of Mr. Bendidi. *Id.* at ¶ 6. When Mr. Bendidi questioned his supervisor about the promotion decision, the supervisor "responded in a hostile and dismissive manner." *Id.* at ¶ 7. Mr. Bendidi was subjected to discriminatory comments during his employment from co-workers such as "Go back to your country" and "We don't want Muslims to work with us." *Id.* at ¶ 8. Mr. Bendidi "was treated differently from similarly situated employees"; "denied training opportunities, advancement opportunities, and workplace support"; and "subjected to intimidation, harassment, excessive scrutiny, and unfair criticism by supervisors and coworkers." *Id.* at ¶¶ 11–13.

Mr. Bendidi "reported discriminatory conduct and harassment" to GDIT human resources and managerial personnel "on multiple occasions during 2023 and 2024," but GDIT "failed to take prompt or effective corrective action." *Id.* at ¶¶ 9–10. "Following [his] complaints regarding discrimination and harassment . . . , [GDIT] intensified its scrutiny and retaliatory treatment." *Id.* at ¶ 15. On March 28, 2024, Mr. Bendidi complained to GDIT's Human Resources Department that he had been "passed over for a promotion, whereas white employees were promoted" and that the IRS Team Lead on his contract "made comments such as, 'Muslims are a threat,' and 'Why are they here?'" ECF Nos. 14-4 at 2; 14-7 at 2.[3] The next day, Mr. Bendidi was placed on a performance improvement plan due to purported workplace conduct issues. ECF No. 1-1 ¶ 14. On April 4, 2024, Mr. Bendidi was placed on administrative leave. *Id.* at ¶ 16. On April 19, 2024, GDIT terminated Mr. Bendidi's employment. *Id.* at ¶ 17.

[3] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

### B. Administrative and Procedural History

On May 1, 2024, Mr. Bendidi filed a charge of discrimination with Prince George's County, Maryland, Office of Human Rights (OHR) in which he alleged retaliation (OHR Charge). ECF No. 14-4 at 2. Specifically, Mr. Bendidi reported that on March 28, 2024, he complained to GDIT's human resources director that he was "passed over for a promotion whereas white employees were promoted," and that on April 4, 2024, GDIT "placed [him] on administrative leave," and subsequently "terminated [his] employment on April 19, 2024, due to the client's alleged request that [Mr. Bendidi] no longer staff the Cyber Security contract." *Id.* On October 23, 2024, Mr. Bendidi filed a charge with the United States Equal Employment Opportunity Commission (EEOC) in which he alleged discrimination based on age and religion (EEOC Charge). ECF No. 14-3 at 2. Mr. Bendidi asserted that his "tickets were not updated by [his] co-workers because they discriminated against [him] because of [his] race (Muslim) and age (51)." *Id.* On May 22, 2025, Mr. Bendidi filed an amended EEOC Charge in which he again alleged discrimination based on age and religion (Amended EEOC Charge). ECF No. 14-7 at 2–4. In addition to repeating his prior allegation regarding the updating of his "tickets," Mr. Bendidi averred that on March 28, 2024, he "complained" to GDIT's human resources director that "the IRS Team Lead made comments such as[ ] 'Muslims are a threat' [ ] and 'Why are they here?'" and that he had been "passed over for a promotion." *Id.* Mr. Bendidi also alleged that subsequent to his complaint, GDIT placed him on administrative leave and terminated his employment. *Id.*; *see also* ECF No. 14-4 at 2. On April 6, 2026, EEOC issued a determination and notice of rights in which it advised Mr. Bendidi that the EEOC "will not proceed further with its investigation and makes no determination about . . . violations of the statute" and provided notice that any lawsuit against GDIT must commence within 90 days of receipt. ECF No. 1-7 at 1.

On May 18, 2026, Mr. Bendidi filed this Court's template complaint for employment discrimination for *pro se* litigants, together with a narrative and supporting exhibits. ECF Nos. 1, 1-1–1-9. In his Complaint, Mr. Bendidi alleges violations of Title VII and the ADEA consisting of unequal terms and conditions of employment, failure to promote, hostile work environment, termination of his employment, and retaliation, all based on his race ("African"), his religion ("Islam"), his national origin ("African"), and his age ("52"). ECF No. 1 at 4–5. Mr. Bendidi seeks lost wages, as well as compensatory and punitive damages. *Id.* at 7.

## II. DISCUSSION

GDIT seeks dismissal of the Complaint on the grounds that Mr. Bendidi failed to exhaust administrative remedies and that his Complaint fails to state a claim upon which relief may be granted. ECF No. 14-2 at 8–18. Mr. Bendidi argues the opposite. ECF No. 16. Following discussion of the applicable standard of review, GDIT's challenges are addressed in turn below.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It is fundamental that the "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the legal remedy

sought. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The same does not hold true for legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-556. To determine whether the Rule 8(a)(2) pleading standard is met, the court separates the complaint's legal conclusions from the factual allegations. *A Soc'y Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard falls somewhere in between "probability," which is not required, and "sheer possibility," which is insufficient. *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Ordinarily a court may not consider matters outside the pleadings when reviewing a motion to dismiss without converting it into a motion for summary judgment. *United States ex rel. Oberg* v. *Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the Complaint or motion to dismiss filings, so long as the documents are integral to the complaint and authentic. *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Robinson* v. *American Honda Motor Co.*, 551 F.3d 218, 222-223 (4th Cir. 2009). A document is integral to the Complaint if "by its very

existence, and *not the mere information it contains*, [it] gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc.* v. *Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (internal quotation marks and citation omitted). "Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint." *Bowie* v. *University of Md. Med. Sys.*, Civil Action No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) (collecting cases). This Court has also found documents attached to a complaint integral to self-represented plaintiff's allegations, particularly when the self-represented plaintiff used a *pro se* template pleading. *E.g.*, *Collins* v. *Del Castro*, Civil Action No. GJH-18-3503, 2019 WL 3536778, at *1 n.2 (D. Md. Aug. 2, 2019); *Thanh Tan Nguyen* v. *Donahoe*, Civil Action No. AW-13-800, 2013 WL 3730681, at *1 n.1 (D. Md. July 12, 2013). Consistent with these authorities, the undersigned has considered Mr. Bendidi's "Statement of Facts and Claims" and the administrative charges, all of which are integral to Complaint and unchallenged as to their authenticity. ECF Nos. 1-1, 14-3, 14-4, 14-7. The undersigned has not considered the other exhibits Mr. Bendidi tendered in support of his Complaint and opposition to the instant motion. *Mylan Lab'ys, Inc.* v. *Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (quotation marks and citation omitted).

**B. Administrative Exhaustion**

GDIT first contends that Mr. Bendidi's claims fail to state a claim because he did not exhaust administrative remedies. ECF No. 14-2 at 8–10. "Title VII gives initial enforcement responsibility to the EEOC." *Chacko* v. *Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). Therefore, before filing suit under Title VII or the ADEA a plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC or appropriate state or local agency. *Fort Bend Cnty., Tex.* v. *Davis*, 587 U.S. 541, 543–544 (2019); *Walton* v. *Harker*, 33 F.4th 165, 172

(4th Cir. 2022). To satisfy administrative exhaustion, a plaintiff alleging "discrete discriminatory or retaliatory acts must file [a] charge within the appropriate time period." *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 122 (2002). In Maryland, which is a deferral state, the time for filing a charge is 300 days from the alleged unlawful employment practice. *Equal Emp't Opportunity Comm'n* v. *R&R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001) (Title VII) (citing 42 U.S.C. § 2000e–5(e) & (e)(1)); *Evans* v. *Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (ADEA). Each discrete discriminatory act, "such as termination, failure to promote, denial of transfer, or refusal to hire . . . starts a new [300 day] clock for filing charges alleging that act." *National R.R. Passenger Corp.*, 536 U.S. at 113-114. Discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges," although they may be used "as background evidence in support of a timely claim." *Id.* at 113. Hostile work environment claims may, however, include allegations that would otherwise be untimely because "[t]heir very nature involves repeated conduct" that "occurs over a series of days or perhaps years." *Id.* at 115.

The administrative exhaustion requirement serves to provide notice to the employer and an opportunity for the EEOC to resolve the allegation of discrimination without the need for litigation. *Sydnor* v. *Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). These twin goals "would be undermined, however, if a plaintiff could raise claims in litigation that did not appear in [the] EEOC charge." *Id.*; *see also Downer* v. *Prince George's Cnty. Bd. of Educ.*, Civil Action No. BAH-21-1618, 2024 WL 3277563, at *14 (D. Md. July 2, 2024), *aff'd on other grounds sub nom.*, No. 24-1704, 2025 WL 1927546 (4th Cir. July 14, 2025) ("It is well recognized that allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges.") (internal quotation marks and citation omitted). The scope of a plaintiff's claims in federal court is therefore "determined by the charge's contents." *Sydnor*, 681 F.3d at 593.

While "the administrative framework plays a substantial role in focusing the formal litigation it precedes," *Chacko*, 429 F.3d at 509, a charge does not strictly limit the claims advanced in a federal civil action, *Miles* v. *Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). As "long as a plaintiff's claims in [the] judicial complaint are reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation, [a plaintiff] may advance such claims in [the] subsequent civil suit." *Sydnor*, 681 F.3d at 594 (internal quotation marks omitted); *see also Chisholm* v. *United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (finding exhaustion where both EEOC charge and federal complaint concerned promotion discrimination but described different parts of the promotion system). A court must construe EEOC charges liberally, but that "liberal construction only stretches so far." *Nnadozie* v. *Genesis HealthCare Corp.*, 730 Fed. Appx. 151, 161 (4th Cir. 2018); *see also Chacko*, 429 F.3d at 509 ("A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits."). In sum, the Court must "strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor*, 681 F.3d at 594.

There are two components to GDIT's exhaustion argument. First, GDIT contends that Mr. Bendidi's failure-to-promote claim is time-barred because he did not file the EEOC charge within 300 days of the alleged discriminatory act. ECF No. 14-2 at 9. Second, GDIT contends that Mr. Bendidi's national origin and hostile work environment claims have not been exhausted because he did not assert them in his EEOC charges. *Id.* at 9–10. Mr. Bendidi counters that any "argument regarding timeliness is not dispositive at the pleading stage." ECF No. 16 at 3. While the Court may consider information outside the 300-day lookback period as "background evidence" when evaluating other timely claims, the Court cannot adjudicate claims of discrete discriminatory acts

alleged to have occurred more than 300 days prior to the filing of a charge of discrimination. *National R.R. Passenger Corp.*, 536 U.S. at 113.

Here, Mr. Bendidi alleges in his Complaint that he GDIT failed to promote him on September 6, 2023. ECF No. 1-1 ¶ 6. Mr. Bendidi's OHR Charge, filed on May 1, 2024 (238 days after the alleged incident), is the only administrative charge that satisfies the 300-day lookback period for this claim.[4] ECF No. 14-4 at 2. Yet, the OHR Charge alleges retaliation—not failure to promote—that occurred between April 4, 2024, and April 19, 2024. *Id.* Further, in his Complaint, Mr. Bendidi attributes responsibility for the failure to promote to his supervisor, not to GDIT generally as with the retaliation alleged in the OHR Charge. ECF Nos. 1 at 2; 1-1 ¶¶ 6–7. The United States Court of Appeals for "the Fourth Circuit has concluded that where the allegations in the EEOC charge and the federal court complaint differ in terms of the alleged discriminatory actor, the type of discriminatory conduct, and the relevant time period, the newly stated claim has not been exhausted." *Hodge* v. *Walrus Oyster Ale House*, Civil Action No. TDC-18-3845, 2019 WL 6069114, at *4 (D. Md. Nov. 15, 2019). Here, all three criteria differ. Even if Mr. Bendidi's supervisor could represent GDIT as an entity, the allegations occurred approximately seven months apart and are substantively different. *Wooten* v. *University of Md., Baltimore*, 733 F. Supp. 3d 402, 426 (D. Md. 2024) (concluding federal claims were not reasonably related to charge allegations because race discrimination and retaliation are different types of discrimination). Mr. Bendidi's

[4] While Plaintiff Khalid Bendidi filed his initial administrative charge with a local agency, charges are often "dual-filed" with the United States Equal Employment Opportunity Commission (EEOC) and state and local agencies pursuant to work-sharing agreements. *Fair Employment Practices Agencies (FEPAs) and Dual Filing*, U.S. Equal Employment Opportunity Commission (Sep. 28 at 14:23 ET), https://perma.cc/Y3N9-6536, (last visited Oct. 16. 2026). This practice appears to have been followed in the instant case, where Mr. Bendidi's charge of discrimination with Prince George's County, Maryland, Office of Human Rights (OHR) includes language that he "want[s] this charge filed with both the EEOC and the State or local Agency." ECF 14-4 at 2; *see also* ECF No. 1-6 (correspondence from OHR to Mr. Bendidi referencing a work-share agreement with the EEOC). The undersigned therefore treats the initial local agency charge as the proper starting point for evaluating the timeliness of Mr. Bendidi's claims.

failure-to-promote claim is therefore not reasonably related to his retaliation claim. *Thiessen* v. *Stewart-Haas Racing, LLC*, 311 F. Supp. 3d 739, 744-745 (M.D.N.C. 2018) (collecting cases).

The OHR Charge includes a statement that Mr. Bendidi told GDIT human resources personnel on March 28, 2024, that he had been "passed over for a promotion, whereas white employees were promoted." ECF No. 14-4 at 2 (identifying the type of discrimination alleged in the charge as "Retaliation"). Reading the OHR charge as a whole, the undersigned concludes that this statement merely identifies the predicate act for Mr. Bendidi's retaliation claim and does not allege a separate form of discrimination. Where a plaintiff identifies a report of discrimination as the protected activity that triggered the alleged retaliation and not as a separate substantive allegation, courts in this Circuit have concluded that the reported discrimination was not administratively exhausted. For example, in *Russell* v. *BSN Med., Inc.* the plaintiff alleged in an EEOC charge that she was retaliated against after she complained about sexual harassment. 721 F. Supp. 2d 465, 476 (W.D.N.C. 2010). The court found that the plaintiff had not administratively exhausted the sexual harassment claim she advanced in federal court. *Id.* (citing *Jones* v. *Calvert Grp., Ltd.*, 551 F.3d 297, 299 (4th Cir. 2009), *abrogated in part by Fort Bend Cnty., Texas*, 587 U.S. at 541). In addition to noting that the plaintiff had checked only the box for retaliation, the *Russell* court concluded that the gravamen of the allegations in the plaintiff's charge was retaliation and the charge did "not specifically allege sexual harassment." *Id.* Another sister court reached the same conclusion in *Gaines* v. *McDonald*, concluding that an age discrimination claim had not been administratively exhausted because the plaintiff's sole allegation was retaliation after having reported age discrimination. 152 F. Supp. 3d 464, 469 (M.D.N.C. 2015). Similarly, in *Ennis* v. *Mission Medical Associates*, the court found that where the charged identified retaliation as the basis for the complaint and alleged retaliatory acts after reporting the allegedly discriminatory comments, the plaintiff's claims of discrimination based on race, sex, and religion had not been

administratively exhausted. No. 1:15CV105, 2016 WL 1603593, at *3 (W.D.N.C. Mar. 28, 2016), *report and recommendation adopted*, 2016 WL 1574614 (W.D.N.C. Apr. 19, 2016).

As this Court has explained, "[a]lthough the failure to 'check the box' on the administrative complaint form alone will not defeat a claim, some facts in the narrative must put the employer on notice of the claim so to encourage potential resolution prior to formal suit." *Ibrahim* v. *Starbucks Corp.*, Civil Action No. PX-22-2545, 2023 WL 4490370, at *2 (D. Md. July 12, 2023) (internal citation omitted) (quoting *Westmoreland* v. *Prince George's Cnty.*, Civil Action No. TDC-14-821, 2015 WL 996752, at *9 (D. Md. Mar. 4, 2015)). No such facts appear in Mr. Bendidi's OHR Charge. Mr. Bendidi clearly identified the basis for his complaint the narrative section, stating "I believe that [GDIT] terminated me in retaliation because I made a discrimination complaint." ECF No. 14-4 at 2. As in *Russell*, this "final sentence of the fact statement sums up [Mr. Bendidi's] charge, and it only alleges retaliation." 721 F. Supp. 2d at 476. The Fourth Circuit has cautioned that courts "are not at liberty to read into administrative charges allegations they do not contain." *Balas* v. *Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). The undersigned therefore concludes that Mr. Bendidi did not administratively exhaust his failure-to-promote claim.

The same holds true for Mr. Bendidi's race and national origin claims, neither of which are alleged in his administrative charges. ECF Nos. 14-3, 14-4, 14-7. As noted, the OHR Charge alleges retaliation only. In both his EEOC Charge and Amended EEOC Charge, Mr. Bendidi identified discrimination based on age and religion as the basis for his complaint and asserted that he had "been discriminated against because of [his] race (Muslim) . . . and age (51)." ECF Nos. 14-3 at 2; 14-7 at 2. These allegations, however, cannot support race and national origin discrimination claims. Importantly, with respect to employment discrimination claims, "[r]ace, national origin, and religion are 'ideologically distinct.'" *Sarraj* v. *Northern Va. Elec., Coop.*, Civil No. 1:22-CV-12, 2022 WL 2820553, at *6 (E.D. Va. July 18, 2022) (quoting *Kun* v. *Finnegan, Henderson, Farabow,*

*Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996)); *see also Kaywan* v. *Aldi LLC*, No. 1:24-CV-1633 (RDA/IDD), 2025 WL 2722648, at *3 (E.D. Va. Sep. 24, 2025) (distinguishing between religion and national origin discrimination claims); *Bonayon* v. *Boeing Co.*, No. CV 2:22-01577-RMG, 2023 WL 386823, at *2 (D.S.C. Jan. 25, 2023) (distinguishing between race and national origin discrimination claims). Although Mr. Bendidi used the word "race" in his EEOC charges, he identified in parentheses that his race was "Muslim." ECF Nos. 14-3 at 2; 14-7 at 2. Yet, a "plaintiff's identity as a Muslim does not represent a race, but [their] membership in a religious faith," which "cannot support a race discrimination claim [under Title VII]." *Sarraj*, 2022 WL 2820553, at *6 (collecting cases). Similarly, race and national origin are not interchangeable. *Bonayon*, 2023 WL 386823, at *2 ("Plaintiff may not sustain a national origin disparate treatment claim based only on allegations related to his race."); *Quraishi* v. *Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, Civil Action No. CCB-13-10, 2013 WL 2370449 (D. Md. May 30, 2013) (noting that for anti-discriminatory purposes under 42 U.S.C. § 1981 a plaintiff's identification as "Pakistani" did not constitute a race discrimination claim). The allegation in Mr. Bendidi's Complaint that that he was subject to discriminatory comments such as "Go back to your country" simply does not feature in any of his administrative charges and thus cannot supply the basis for a claim of national origin discrimination in the instant action. ECF No. 1-1 ¶ 8. "EEOC complaints are commonly made by those unschooled in the technicalities of formal pleading and should be construed with the utmost liberality." *Marrero* v. *Verizon Md. LLC*, Civil Action No. MJM-24-3311, 2026 WL 2469219, at *5 (D. Md. Aug. 24, 2026) (internal quotation marks and citation omitted). Nevertheless, even extending this deference, the undersigned cannot read a race or national origin claim into Mr. Bendidi's charge that he did not himself make out. *Lewis* v. *United States*, Civil Action No. DKC-21-2387, 2022 WL 3716544, at *2 (D. Md. Aug. 29, 2022) (noting that the Court "will not rewrite the complaint to include claims that were never presented")

(internal quotation marks and citation omitted). Mr. Bendidi's failure to administratively exhaust is fatal to his race and national-origin discrimination claims. Because Mr. Bendidi's administrative charges are similarly devoid of any reference to a hostile work environment—either by categorization or substantive allegation—that claim fails for the same reason. ECF Nos. 14-3, 14-4, 14-7. Mr. Bendidi's contention that he plausibly alleged a hostile work environment claim cannot cure his failure to satisfy the administrative exhaustion prerequisite to filing suit. ECF No. 16 at 4.

Mr. Bendidi advances a series of other allegations in his Complaint in support of his Title VII and ADEA claims that are also unexhausted at the administrative level. In this Court, Mr. Bendidi avers that he was subjected to Islamophobic remarks, intimidation, harassment, excessive scrutiny, and unfair criticism; that he was denied training and advancement opportunities and workplace support; and that he was treated differently from similarly situated younger and non-Muslim employees. ECF No. 1-1 ¶¶ 8, 11–15. Mr. Bendidi did not, however, timely assert any of these allegations at the administrative level. ECF Nos. 14-3, 14-4, 14-7. As noted, the OHR Charge alleges only retaliation. ECF No. 14-4 at 2; *see also* II.B., *supra.* The EEOC Charge asserts that Mr. Bendidi's "tickets were not updated by [his] coworkers" because of discrimination based on religion and age. ECF No. 14-3 at 2. This discrete allegation—the substance of which is unclear—cannot support the broad range of religion and age discrimination allegations Mr. Bendidi advances in his Complaint. ECF Nos. 1-1 ¶¶ 11–13; 14-3 at 2. The allegations in the EEOC Charge and Complaint do not share common ground. They do not, for example, challenge different aspects of the same promotion system, *Chisholm*, 665 F.2d at 491, or allege different forms of retaliation, *Smith* v. *First Union Nat'l. Bank*, 202 F.3d 234, 248 (4th Cir. 2000). Rather, Mr. Bendidi has "completely renovate[d] his central factual allegations as between the administrative charge and the complaint." *Coles* v. *Carilion Clinic*, 894 F. Supp. 2d 783, 791 (W.D. Va. 2012). The only allegation in the Complaint that bears resemblance to the allegations in Mr. Bendidi's administrative

charges is that he "was treated differently from similarly situated employees . . . including younger and non-Muslim employees." ECF No. 1-1 ¶ 11; *see also* ECF No. 14-3 at 2.

The Amended EEOC Charge cannot support the allegations in the Complaint because the new allegations contained therein are untimely. ECF No. 14-7 at 2–3. Mr. Bendidi filed the Amended EEOC Charge on May 22, 2025, which is more than 300 days after both the date of the discrimination alleged in that charge (March 24, 2024) and the date on which GDIT terminated Mr. Bendidi's employment (April 19, 2024). ECF Nos. 1-1 ¶ 17; 14-7 at 2, 4. EEOC regulations provide that a "charge may be amended to cure technical defects or omissions," but only "amendments alleging additional . . . unlawful employment practices *related to or growing out of the subject matter of the original charge* will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b) (emphasis added). Therefore, only the allegations in the Amended EEOC Charge that relate to or grow out of allegations contained in the EEOC Charge or OHR Charge are actionable. The Amended EEOC Charge allegations regarding Islamophobic remarks or a failure to promote do not relate to or grow out of allegations set forth in Mr. Bendidi's earlier administrative charges. *Brown* v. *Lexington Cnty. Health Servs. Dist., Inc.*, No. C/A 3:12-2674-MBS-PJG, 2013 WL 5467623, at *5 (D.S.C. July 11, 2013), *report and recommendation adopted*, 2013 WL 5467626 (D.S.C. Sep. 27, 2013) (concluding that an amended charge did not relate back to the original charge because "claims asserting discrimination based upon different forms of unlawful employment practices are not reasonably related") (italics removed). Therefore, all of Mr. Bendidi's claims, save his retaliation, age, and religious discrimination claims, must be dismissed for failure to exhaust administrative remedies. Due to the scope and timing of Mr. Bendidi's administrative charges, his age and religious discrimination claims are limited to allegations of disparate treatment.

A plaintiff is generally permitted at least one opportunity to amend a complaint to address a pleading deficiency, but such leave may appropriately "be denied if amendment is deemed futile." *Green* v. *iMentor, Inc.*, Civil Action No. RDB-24-2567, 2025 WL 2299432 at *13 (D. Md. Aug. 8, 2025). An amendment is futile where it would be "clearly insufficient or frivolous on its face." *Johnson* v. *Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Here, any amendment of claims the Court has dismissed due to failure to exhaust administrative remedies would be futile because repleading cannot satisfy the prerequisite to suit. *E.g.*, *Sexton* v. *Northrop Grumman Sys. Corp.*, Civil Action No. GLR-24-1192, 2024 WL 4988346, at *5 (D. Md. Dec. 5, 2024).

### C. Failure to State a Claim

GDIT also argues that Mr. Bendidi's Complaint does not plausibly allege a violation of Title VII and the ADEA. ECF No. 14-2 at 11–18. The undersigned concurs.

Title VII prohibits an employer from discriminating against "any individual with respect to [ ] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA prohibits an employer from similar acts of discrimination "because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may pursue a Title VII or an ADEA claim by offering direct evidence of discrimination or, as is more common, by offering indirect evidence through the burden shifting framework adopted by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). *Coleman* v. *Whitley*, No. 21-1181, 2022 WL 16630570, at *1 (4th Cir. Nov. 2, 2022). Under the *McDonnell Douglas* framework, a plaintiff has the burden of establishing a prima facie claim of discrimination. *Id.* To do so, a plaintiff must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman* v. *Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012) (Title VII); *Adinolfi*

v. *North Carolina Dep't of Justice*, No. 22-1329, 2023 WL 1814206 at *1 (4th Cir. Feb. 8, 2023) (ADEA). While a plaintiff need not establish a prima facie claim of discrimination to survive a Rule 12(b)(6) motion, the claim's elements are helpful in determining whether the plaintiff has stated a plausible claim. *Yampierre* v. *Baltimore Police Department*, Civil Action No. ELH-21-1209, 2022 WL 3577268, at *19 (D. Md. Aug. 18, 2022). Here, Mr. Bendidi has not plausibly alleged disparate treatment. Mr. Bendidi avers in conclusory fashion that he "was treated differently from similarly situated employees outside [his] protected classes, including younger and non-Muslim employees." ECF No. 1-1 ¶ 11. Assuming that the first three elements are satisfied, this allegation, which is devoid of any factual content and merely recites a formulaic element of his cause of action, does not plausibly allege the fourth element of age or race discrimination claim. *Twombly*, 550 U.S. at 555.

Title VII also prohibits an employer from discriminating against an employee for "participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Perkins* v. *International Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *see also* 42 U.S.C. § 2000e-3(a). To state a retaliation claim, a plaintiff must allege that they: (1) "engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli* v. *City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011). A plaintiff may make out a prima facie case of retaliation under ADEA with the same elements. *Fitzgerald* v. *Botetourt Cnty., Va.*, No. 22-1081, 2024 WL 4579401 at *3 (4th Cir. Oct. 25, 2024). "Complaints raised through internal company procedures are recognized as protected activity." *Roberts* v. *Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). "At the motion to dismiss stage, a plaintiff need not prove these elements but need only plausibly allege facts that allow a court to reasonably infer that the elements are satisfied." *West* v. *Mayorkas*, Civil Action No. JKB-23-01661, 2024 WL 3878375, at *12 (D.

Md. Aug. 20, 2024) (internal citation omitted). A retaliation claim remains viable even if the underlying conduct which an employee had complained about is dismissed. *Nealon* v. *Stone*, 958 F.2d 584, 590 (4th Cir. 1992).

The Court evaluates Mr. Bendidi's retaliation claim as to whether he has sufficiently stated a claim for retaliation based on his March 28, 2024 report to GDIT human resources personnel.[5] GDIT notes that Mr. Bendidi "does not provide any facts identifying the conduct or behavior that he claims he reported to Human Resources or the person or persons to whom he reported it." ECF No. 14-2 at 16. Because the administrative charges are integral to the Complaint, at this stage of the case, the undersigned accepts as true that Mr. Bendidi made a report to GDIT human resources personnel on Mach 28, 2024. The undersigned likewise accepts as true that GDIT terminated Mr. Bendidi's employment. Nevertheless, Mr. Bendidi's pleadings do not plausibly allege that his protected activity was "causally connected to" his employer's adverse action. *Okoli*, 648 F.3d at 223. Crucially, Mr. Bendidi's Complaint and integral documents do not allege that the decisionmaker who terminated him was aware of or influenced by Mr. Bendidi's report to GDIT human resources personnel. Nor can Mr. Bendidi's pleadings be saved by the close temporal proximity between his protected activity and termination (21 days). While the Court is permitted to take note of such proximity to draw an inference regarding causal connection, the plaintiff must still articulate that a decisionmaker was actually aware of the protected activity. *Barnhill* v. *Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) ("In any event, the plaintiff must show that a relevant decisionmaker was actually aware of the protected activity before making their decision"); *Forney* v. *Kennedy*,

---

[5] The undersigned notes that Mr. Bendidi's Complaint and supporting narrative do not reference his March 28, 2024 report but instead reference two separate April 4, 2024 reports. ECF Nos. 1-1 ¶ 9; 1-3 at 1–4. As Mr. Bendidi does not describe any April 4, 2024 protected activity in his administrative charges, he has not made a timely claim of retaliatory termination with respect to those reports. Accordingly, the undersigned considers only the March 28, 2024 report when evaluating the sufficiency of Mr. Bendidi's retaliation claim.

Civil Action No. RDB-24-0936, 2026 WL 2162715 (D. Md. July 27, 2026) at *16 n. 17 (causation not shown where plaintiff has not alleged that decisionmaker knew of the relevant protected activity despite temporal proximity). Mr. Bendidi has therefore not plausibly alleged a claim of retaliation.

## III. CONCLUSION

For the foregoing reasons, GDIT's motion to dismiss Mr. Bendidi's Complaint is granted. A separate Order follows.

Date: October 16, 2026

/s/
Erin Aslan
United States Magistrate Judge